# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL TERRELL BEALE,

    Defendant.

Case No. 2:17-cr-00050-JAD-CWH

**REPORT AND RECOMMENDATION**

Presently before the court is Defendant Michael Beale's Motion to Suppress Evidence (ECF No. 33), filed on July 24, 2017, the Government's Response (ECF No. 35), filed August 7, 2017, Beale's Reply (ECF No. 37), filed August 16, 2017, the Government's Surreply (ECF No. 45), filed August 29, 2017, and Beale's Response to the Government's Surreply (ECF No. 46), filed September 5, 2017. An evidentiary hearing was conducted on November 6, 2017. (Mins. of Proceedings (ECF No. 53).) After the evidentiary hearing, Beale submitted an additional brief regarding the legality of the search and seizure (ECF No. 54), filed November 13, 2017, and the Government responded (ECF No. 56) on November 20, 2017.

**I. BACKGROUND**

On May 11, 2016, Las Vegas Metropolitan Police Department ("LVMPD") officers responded to a call for assistance regarding the destruction of property by a man at Sienna Suites, a furnished apartment complex in Las Vegas. They subsequently recovered a firearm located in a stairwell of the apartment complex which was eventually connected to Beale by DNA evidence seized under a state search warrant. Beale is charged by Criminal Indictment with one count of Felon in Possession of a Firearm in violation of Title 18, United States Code, sections 922(g)(1) and 924(a)(2). ((ECF No. 1).)

Beale first moved to suppress DNA evidence seized as the result of a state court search warrant because it violated his Fourth Amendment rights. Specifically, he argued that the police lacked a lawful basis for his detention or arrest, and therefore the DNA evidence obtained from him must be suppressed. After Beale filed his motion to suppress, the Government obtained DNA evidence based upon a search warrant from a federal judge, and then opposed Beale's motion to suppress to suppress the state DNA evidence on the grounds that it was moot.

In reply, Beale makes two arguments. First, Beale reiterates his argument that his detention was illegal, and notes that the Government failed to respond to this argument. Second, Beale argues that the federal search warrant was not supported by probable cause and moved for a *Franks*[1] hearing because the federal affidavit omitted information material to the determination of probable cause. Specifically, Beale asserts that the federal warrant application omitted the fact that when Beale was confronted by police officers, and then walked down the stairs, he was "showing his hands the entire time." Beale argues that this fact negates probable cause because if he was showing his hands the entire time, he could not have possessed or dropped the gun in the stairwell. The Government filed a surreply indicating that it did not concede Beale's illegal seizure and that there was reasonable suspicion to justify Beale's detention.[2] Based upon this dispute, the Court conducted a hearing as to whether there was a legal basis to seize Beale, and a *Franks* hearing on the limited question of whether the omission regarding Beale showing his hands the entire time was true. (Mins. of Proceedings (ECF No. 53).)

## II. ANALYSIS

### A. Pertinent Facts

LVMPD Officer Kara Mahon testified that in the afternoon of May 11, 2016, she responded to a domestic violence call at the Sienna Suites located on Boulder Highway in Las Vegas. Sienna Suites has furnished apartments for rent. While handling that call, the officers

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

[2] The Court agrees that the Government did not waive its arguments about the validity of the state warrant, but merely considered it to be moot in light of the granting of the federal warrant.

received a second complaint by a woman later identified as Ms. Gustat. She said that a man was in her third floor apartment destroying her property. After resolving the first domestic violence call, Officer Mahon started to investigate Ms. Gustat's complaint. As Officer Mahon and her partner, Officer Murguia, accompanied Ms. Gustat to the third floor apartment, Ms. Gustat said that her boyfriend (Beale) might have a weapon. When they arrived, using one of two stairwells leading to the apartment on the third floor, Ms. Gustat then saw and identified Beale, who had just come out of an apartment and was standing at the stairwell about 20 yards away.

To allow her to investigate Ms. Gustat's allegations, Officer Mahon yelled for Beale to "stop" and stay there. Beale momentarily stopped, looked at the officer, but then walked in the opposite direction and went down the stairs. Beale had nothing in his hands at that time, and Officer Mahon did not see him drop anything. Officer Mahon testified that Beale never put his hands up and did not have his hands up as he walked away from her and proceeded down the stairs. As she often did, she said she may have told Beale to "show your hands," or words to that effect, but was not sure she did so. Officer Mahon and Officer Murguia, using separate staircases, pursued Beale to the ground floor. Officer Mahon testified that even after she caught up with, and confronted Beale, he continued to back away from her and would not "stay put" while they were talking. Beale also refused to identify himself. Officer Mahon testified that Beale was detained so that she could continue her investigation into the destruction of property. Fearing he would flee, the officers handcuffed Beale.

Because a crowd of about five unknown people gathered at the base of the stairwell where Beale was detained, Officer Murguia moved Beale to a patrol car located about 25 to 30 yards away. Officer Mahon returned to the third-floor apartment to investigate Ms. Gustat's complaint about the destruction of property. Ms. Gustat was hysterical and had been crying. As she began to investigate, Officer Murguia radioed Officer Mahon and told her that a Sienna Suites security officer said that there was a gun on the stairwell where Beale had been. Officer Mahon immediately went down the stairwell where Beale had fled and found and seized a firearm on the steps between the second and ground floors. She testified that three or four minutes passed from the time Beale was detained at the bottom of the stairs until she located the firearm. Officer Mahon

3

also testified that, upon finding the firearm, she believed that she had reasonable suspicion to investigate whether Beale had illegally possessed the firearm.

When Officer Mahon returned to the patrol car with the firearm, she saw Officer Murguia and two other officers struggle to place Beale into the patrol car. Beale refused to sit in the partrol car, and kicked at the officers. Finally, Beale got in the patrol car. Officer Mahon then returned to the apartment to continue her investigation with Ms. Gustat. Officer Mahon said that when she began her investigation, she did not know what was being destroyed in the apartment or who had leased the apartment. At the apartment, she did not see any destroyed property, but the apartment was in disarray. She later learned that after Beale was placed in the car, he used a lighter retrieved from his pocket to burn the seat belt and free himself, and had been placed under arrest for obstructing a police officer and destruction of property. Beale was then moved to another police vehicle, and kicked out the windows in the car, and was thereafter hobbled.

Detective Erik Morris, LVMPD testified that he arrived at the scene in response to a call for investigative assistance because a firearm was found, and a search warrant would be needed. After being briefed by Officers Mahon and Murguia, he prepared an affidavit to support the search warrant for Beale's DNA, and then called Judge Hafen, a state judge. Detective Morris was sworn and read his affidavit to Judge Hafen on a recorded line, and received search authorization. He testified that he later executed the search warrant, believing that it was lawful. He testified that the recording of his affidavit was later transcribed. The verbatim transcript of the search warrant indicates, in pertinent part, that:

> Officers went up to the ah, top of the breezeway, third floor, where "4311" is located and observed a black male adult outside of apartment "4311" and order him to come towards them. Um, showing his hands the entire time, but the black male fled the opposite direction, down the opposite set of stairs.

Government Exhibit 4. Detective Morris testified that he intended to communicate that the black male adult had been ordered to come towards the officers showing his hands the entire time, not that the suspect was showing his hands the entire time when he was confronted.

///

///

4

**B. Investigative Detention**

Beale asserts his detention pending Officer Mahon's investigation violated his Fourth Amendment rights, and therefore the fruits of that illegal detention (the DNA test results) should be suppressed. The Government argues that there was reasonable suspicion to detain Beale pending investigation, and the detention was lawful.

An investigatory detention under the Fourth Amendment must be supported by "reasonable suspicion that criminal activity may be afoot." *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In assessing whether an officer has reasonable suspicion to conduct an investigatory detention, reviewing courts "look at the 'totality of the circumstances' of each case to see whether the detaining officer had a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Cortez*, 449 U.S. at 417 (1981); *see also United States v. Sigmond-Ballasteros*, 285 F.3d 1117, 1121 (9th Cir. 2002) (citing *Arvizu*, 534 U.S. at 273).

A reviewing court's determination of reasonable suspicion is a process that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273 (citing *Cortez*, 449 U.S. at 418). The Fourth Amendment is satisfied if an officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot and observation of factors which are by themselves consistent with innocence, but may collectively amount to reasonable suspicion. *Id*. at 273-74. Reasonable suspicion is not a matter of hard certainties, but of probabilities. *Cortez*, 449 U.S. at 417-18. However, reasonable suspicion requires more than an officer's "hunch" even if the hunch later turns out to be a good one. *Terry*, 392 U.S. at 27. The reasonable suspicion standard is less than a preponderance of the evidence. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

In this case, the Court finds that Officer Mahon was justified in detaining Beale pending further investigation. Nevada Revised Statutes § 206.310 prohibits the destruction of another's

property, and it is not a defense that the suspect has a leasehold interest in the real property that was destroyed.[3] Officer Mahon testified that Ms. Gustat initially reported that her boyfriend was destroying her property. Officer Mahon responded by going to the apartment with Ms. Gustat to investigate that claim. As illuminated on cross-examination, when she went to the apartment, Officer Mahon was unsure what or whose property was being destroyed, and it could have belonged to Beale. But it is also reasonable to infer that it could have belonged to Ms. Gustat, since she was emotional and accused Beale of destruction of her property, or that it belonged to the Sienna Suites, which furnished the apartment. Beale argues that Officer Mahon's testimony is inconsistent because when she started her investigation into Ms. Gustat's claim about destruction of her property, she did not know whose property had allegedly been destroyed. Beale therefore contends that the information that Officer Mahon had was insufficient to establish reasonable suspicion to believe Beale was destroying the property of another.

As they arrived at the apartment, Ms. Gustat identified Beale, who was nearby, as the person who had destroyed property. Officer Mahon had a fresh complaint from Ms. Gustat, and Beale was in the same general location as the apartment where the crime had allegedly been committed. Officer Mahon then told Beale to stop or stay there, and perhaps, to show his hands. Beale apparently saw and heard Officer Mahon tell him to stop because he looked at her, but then went in the opposite direction. Evasive action can contribute to the totality of the circumstances which suggests reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 120 (2000); *United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000) (failure to submit and taking evasive action contribute

---

[3] Nevada Revised Statutes § 206.310 provides:

1. Every person who shall willfully or maliciously destroy or injure any real or personal property of another, for the destruction or injury of which no special punishment is otherwise specially prescribed, shall be guilty of a public offense proportionate to the value of the property affected or the loss resulting from such offense.

2. It is not a defense that the person engaging in the conduct prohibited by subsection 1 holds a leasehold interest in the real property that was destroyed or injured.

6

to reasonable suspicion). Based upon these circumstances, Officer Mahon had reasonable suspicion that Beale had destroyed property. Beale's argument that Officer Mahon could not detain Beale until she confirmed Ms. Gustat's allegation that her property had been destroyed ignores the officer's *Terry* authority to briefly detain a suspect pending investigation. At the moment of detention, Officer Mahon had a "particularized and objective basis" for suspecting legal wrongdoing by Beale, and under *Terry*, was authorized to detain him to enable her to conduct her investigation.

Beale argues that he had no obligation to cooperate with the police investigation by identifying himself at the bottom of the stairwell. Regardless of Beale's lack of cooperation, Officer Mahon had reasonable suspicion that he had damaged Ms. Gustat's property, and temporary investigatory detention was appropriate.

By handcuffing Beale, Officer Murguia did not convert the *Terry* stop into a custodial arrest. "Handcuffing a suspect does not necessarily dictate a finding of custody." *United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir. 1981). Where a suspect threatens physical danger or flight, officers may use handcuffs in the course of a *Terry* stop. *See Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996) ("We have only allowed the use of especially intrusive means of effecting a stop in special circumstances, such as . . . where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight . . . ."). Here, Officer Mahon testified that Beale walked away when she told him to stop at the top of the stairs, was backing away from her when she caught up with him and would not "stay put" while they were talking, and refused to identify himself. Under the circumstances, the Court finds that the use of handcuffs was justified and did not convert the *Terry* stop to an arrest because Beale's actions raised reasonable concerns of flight. The officers' decision to move Beale to the patrol car 25 yards away when a crowd gathered during their initial investigation to avoid disruption was also reasonable. Beale makes no argument that his movement to the patrol car carried any legal significance.

If, in the course of a *Terry* investigation, police develop reasonable suspicion that additional criminal activity has occurred, they may broaden their investigation to address new suspicions.

*See, e.g., United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000). Officer Mahon testified that within three or four minutes of Beale's detention, she discovered the firearm in the stairwell where Beale had fled. This discovery provided additional justification to detain and investigate Beale for unlawful possession of a firearm. Police can rely upon their experience and training to draw inferences about information available to them. *Cortez,* 449 U.S. at 417. Although it is true, as Beale states, that possession of a firearm in Nevada is lawful, it is unusual to find a firearm in a common area. It was found where Beale had fled confrontation with Officer Mahon, after Ms. Gustat said she thought Beale might have a weapon, and it can reasonably be inferred that individuals who lawfully possess firearms generally do not abandon them. Accordingly, the Court finds that there was reasonable suspicion that Beale had illegally possessed the firearm, and his detention was appropriate to investigate that offense as well.

Beale argues that when Officer Mahon went to the apartment and did not find evidence of Ms. Gustat's property having been destroyed, the reasonable suspicion which justified Beale's detention had dissipated, and his detention was not longer justified. Beale's argument fails to account for the fact that Officer Mahon's investigation at the apartment had been interrupted by the report that a firearm was on the staircase, and Officer Mahon's new reasonable suspicion that Beale had wrongfully possessed a firearm. As Officer Mahon testified, because only three or four minutes had passed from the time that Beale was originally detained and her seizure of the firearm, Officer Mahon had not had the chance to complete her investigation. She testified that she had not yet determined the facts and circumstances of Beale's presence at the room, or even his identity. Officer Mahon testified that Ms. Gustat was crying, the apartment was in disarray, and she believed there was a possibility of domestic violence. When Officer Mahon returned to the patrol car with the firearm, Beale's detention was still justified because she needed to complete her investigation both of the destruction of property and possession of the firearm. Dissipation of reasonable suspicion, as Beale argues, had not occurred.

**C. Probable Cause to Arrest Beale at Stairwell**

The Government also argues, as testified by Officer Mahon, that Beale had violated Nevada Revised Statutes § 197.190 because he hindered the lawful discharge of official duties by fleeing,

and his immediate arrest at the foot of the stairwell was therefore lawful. The Court agrees. A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle*, 540 US 366, 370 (2003); *see also Atwater v. Lago Vista*, 532 US 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") Probable cause exists when, "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

Nevada Revised Statutes § 197.190 provides:
> Every person who, . . . shall willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties, shall, where no other provision of law applies, be guilty of a misdemeanor.

Officer Mahon's order to "stop" was a lawful order in the discharge of official duties. Beale's refusal to submit to the lawful detention at the top of the stairs, when he instead walked away in the opposite direction, hindered, delayed, and obstructed Officer Mahon's ability to conduct her investigation into the destruction of property. It is true, as Beale argues, that simply walking away from a police officer, or refusing to answer the officer's questions as Beale apparently did in this case, without more, does not rise to the level of preventing that officer from discharging her duties. Here, Beale had been identified by Ms. Gustat as the person who had destroyed her property, and failed to stop when so ordered by the officers. Beale was not free to simply walk away when summoned by the officers because the officers had, at least, reasonable suspicion to detain him. Although Officer Mahon did not arrest Beale for this violation, when facts known to the arresting officer at the time of the offense support probable cause, the arrest is proper even if the officer invoked the wrong offense. *See Whren v. United States*, 517 U.S. 806, 812–13 (1996) (an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.) Beale was subject to arrest at the bottom of the stairwell for violation of Nevada Revised Statutes § 197.190.

Even if, as Beale argues, his arrest for obstruction for fleeing was not justified at the bottom of the stairwell, it was undoubtedly justified when he resisted detention and refused to be placed in the patrol car during Officer Mahon's investigation. Beale kicked at the officers and had to be physically placed into the patrol car. These are clearly acts hindering, delaying, or obstructing the officers efforts to investigate the alleged destruction of property in violation of Nevada Revised Statutes § 197.190. Moreover, when Beale burned the seat belt with a lighter to free himself, he destroyed police property. Although the timing of the end of Officer Mahon's investigation in the apartment is not clear, by the time she returned to the patrol car, Beale's arrest was justified because he burned the seat belt. Regardless of the results of Officer Mahon's investigation into the destruction of property, Beale was properly in custody because there was probable cause for his arrest for destruction of police property which occurred during Officer Mahon's investigation.[4]

In summary, there was reasonable suspicion to detain Beale at the bottom of the stairs for destruction of Ms. Gustat's property. Within three or four minutes of Beale's detention pending investigation, there was reasonable suspicion that Beale had illegally possessed a firearm. In light of this lawful detention, after Beale arrived at the patrol car, there was probable cause for Beale's arrest when he hindered the police by refusing to enter the car, and later for burning the seat belt.

**D. Validity of the Federal Warrant**

Beale originally moved to suppress the DNA results of the state search warrant obtained by Detective Morris. The supporting state affidavit included information that Beale may have been showing his hands the entire time. Later, Beale noted that the affidavit in support of the federal search warrant did not include the statement regarding Beale having his hands showing, and so he moved for a *Franks* hearing, arguing that the federal affidavit omitted this fact. Beale argues that if

---

[4] The Government correctly notes that the collective knowledge of the officers is sufficient to establish reasonable suspicion and probable cause for Beale's detention and subsequent arrest. A court may consider the collective knowledge of the officers in considering their beliefs concerning probable cause or reasonable suspicion. *See United States v. Bernard*, 623 F.2d 551, 561 (9th Cir. 1979) (reasoning that "the officers involved were working in close concert with each other and the knowledge of one of them was the knowledge of all") (internal citation omitted); *see also United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990).

this omitted fact is true, it is unlikely that he possessed a firearm, and the intentional omission undermines the validity of the search warrant. For this reason, the Court ordered a *Franks* hearing to determine the truth of the statement regarding whether Beale showed his hands at the top of the stairs.

Additionally, Beale argues that additional facts were included in the federal affidavit that were illegally obtained: (1) that an LVMPD detective previously obtained a state warrant, and (2) a grand jury indicted Beale for being a felon in possession of a the firearm. Beale argues that since these facts were the fruits of police action that violated Beale's Fourth Amendment rights, they should not be allowed in the affidavit.

### 1. Franks Hearing

In *Franks v. Delaware*, the Supreme Court established a two-prong test for challenging the sufficiency of a search warrant affidavit. 438 U.S at 155-56. The Court noted that there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if he can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *Id.* at 155-56. "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant, disputed factual issue' exists such that a hearing is required." *United States v. Martin*, 2010 WL 5575323 *7 (D. Nev. Oct. 5, 2010) (*citing United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)).

///
///
///
///

11

Beale made a preliminary showing of a misleading omission by pointing to the verbatim transcript of Detective Morris's oral affidavit to Judge Hafen, which contained an arguably confusing comment about whether Beale was "showing his hands the entire time" when he was confronted by Officer Mahon at the top of the stairwell.[5] The purpose of the *Franks* hearing was to determine whether or not the affidavit wrongfully omitted that fact. If it did, then the search warrant was subject to reconsideration as required by *Franks*.

At the hearing, Officer Mahon testified credibly that Beale did not show his hands when she confronted him – rather, he looked at her and walked in the opposite direction down the stairs. Detective Morris, who had been briefed by Officers Mahon and Murguia so that he could prepare a search warrant affidavit, testified that his statement to Judge Hafen was that Beale was ordered to come towards the officers showing his hands the entire time, but that Beale instead fled in the opposite direction. Having considered this evidence, the Court finds that the transcription of the state affidavit caused confusion, but that as testified by Officer Mahon, Beale did not show his hands when he was confronted. For that reason, Beale's claim of a wrongful factual omission by Detective Morris is not supported by the evidence. No remedy is required under *Franks*.

    2.    *Whether the federal affidavit was tainted by illegally seized evidence.*

Beale argues that the disclosure of the state search warrant improperly bolsters the application for the federal warrant because that information was "tainted evidence" seized in violation of Beale's Fourth Amendment rights. Because this Court has already determined that Officers Mahon and Murguia had reasonable suspicion to detain Beale, as well as probable cause

---

[5] The verbatim transcript of the search warrant affidavit indicates, in pertinent part, that:

Officers went up to the ah, top of the breezeway, third floor, where "4311" is located and observed a black male adult outside of apartment "4311"and order him to come towards them. Um, showing his hands the entire time, but the black male fled the opposite direction, down the opposite set of stairs.

Government Exhibit 4.

for his arrest, there was no tainted evidence presented to the federal magistrate judge.[6]

The affidavit also indicates that Beale had been indicted. Believing that tainted evidence of an illegal search was used to support the indictment, Beale argues that the indictment should not have been mentioned in the affidavit. But because the Court has determined that the DNA seizure under the state warrant did not violate Beale's Fourth Amendment rights, the indictment was not tainted.

Beale has not proved facts to rebut the presumption of the validity of the federal warrant. *See Franks*, 438 U. S. at 171. Accordingly, Beale's argument that the "tainted evidence" of a prior search warrant and prior indictment improperly influenced the magistrate judge in approving the federal search warrant has no merit. The magistrate judge had a substantial basis for concluding the affidavit supported probable cause, and the decision is entitled to deference. *See United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984).[7]

### III. CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Beale's Motion to Suppress Evidence (ECF No. 33) be **denied**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] The federal affidavit notes, as "a matter of full disclosure," that the state search warrant authorized the seizure of Beale's DNA, and that a motion to suppress had been filed alleging insufficient probable cause for the warrant. The affidavit itself limits the use of that information, however, indicating that the affiant seeks a federal search warrant based solely upon the probable cause contained in the affidavit. The magistrate judge could certainly understand the limited nature of the disclosure.

[7] The Court has not analyzed the Government's argument regarding the applicability of the "good faith" exception to the exclusionary rule because the Court finds that the affidavit supporting the federal search warrant was not tainted, and there were no improper omissions.

## IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: December 29, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**